IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **KAM LEE** <br><br> Plaintiff, <br><br> v. <br><br> **SAKS FIFTH AVENUE LLC** <br><br> Defendant. | **COMPLAINT** <br><br> (Jury Trial Demanded) |

## COMPLAINT

Plaintiff Kam Lee ("Ms. Lee"), by and through her undersigned counsel, for its Complaint against Defendant SAKS FIFTH AVENUE LLC ("Saks" or "Defendant") states as follows:

## PARTIES

Comes now, Plaintiff, and for cause of action against the Defendant, complain and allege as follows.

1. Plaintiff Lee is an individual currently residing at 2491 Lockerly Pass, Duluth, GA, 30097.

2. Defendant Saks is a Massachusetts limited liability company with its principal place of business in New York, New York.

## JURISDICTION AND VENUE

3. Plaintiff brings this complaint under federal diversity jurisdiction, 28 U.S.C. 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

4. Upon information and belief, the Court has personal jurisdiction over Saks in that Defendant committed acts within New York State and this judicial district giving rise to this action and Defendant established minimum contacts with the forum such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. Saks operates a "Full Line" retail store in New York ("Store 601") where multiple acts of credit card fraud were perpetrated by Saks employees against Plaintiff. Specifically, a Saks employee illegally charged Plaintiff's SAKSFIRST card tens of thousands of dollars for designer handbags at Store 601.

5. Upon information and belief, venue in this District is proper pursuant to 28 USC 1391 because Saks committed wrongful acts here.

**INTRODUCTION AND STATEMENT OF FACTS**

6. On April 2, 2018, Saks reported that 5 million of its customers suffered a data breach, with cybercriminals stealing credit and debit card information.

7. Ms. Lee is a successful business woman based in the Georgia area, owning several furniture stores, restaurants, and commercial properties that generate millions of dollars in revenue per year.

8. Ms. Lee opened a SAKSFIRST account ending in 1672. EX. A.

9. In July, 2020, Plaintiff received a $28,290 invoice from Saks for charges she supposedly debited in person at Store 601 in New York. Specifically, two separate, fraudulent transactions were processed for seven designer handbags. *See* Transaction #28908, dated 6/4/2020, totaling $15,500 (Store 601, Terminal 310, Representative Andrew Daly (814488)); *see also* Transaction 72112, dated 6/17/2020, totaling $12,790, processed again by Andrew Daly. EX. A.

10. Ms. Lee never traveled to New York in 2020, and thus could not have made these alleged in-store purchases in Store 601.  She has never bought a single designer handbag from any Saks location, much less make the kind of bulk purchases at issue in this case.

11. As noted, Ms. Lee is a successful business owner who certainly wouldn't risk her good reputation by falsely disputing the handbag charges.  And she certainly wouldn't spend the time and resources advancing such false claims in litigation.

12. Stating as much, Ms. Lee disputed the charges with Saks in July, 2020.

13. On July 30, 2020, Saks denied Plaintiff's request to reverse the charges, stating "[a]ll pieces were consented and confirmed before being charged to your account."  EX. A.

14. Saks reported the "delinquent" balance to the credit companies, causing irreparable damage to her business interests.  To protect her credit rating, Ms. Lee was thus forced to pay almost $30,000 in false charges due to Defendant's failure to protect her personal and financial information and perform a reasonable inquiry into the subject transactions, even a cursory review of which would have immediately revealed their fraudulent nature.

15. On information and belief, the transactions were illegally processed by Saks store representative Andrew Daly, or someone having access to his terminal, either in-person or remotely.  EX.A.  A simple review of the transaction history and store video footage from June 4 and 17 would confirm Ms. Lee was never present in the store to make these alleged purchases, which were clearly the result of a data breach of Saks's networks and databases.

16. Personal identification information ("PII") is a valuable property right.

17. At a FTC public workshop in 2001, then-Commissioner Orson Swindle described the value of a consumer's PII:

18.     The use of third party information from public records, information aggregators and even competitors for marketing has become a major facilitator of our retail economy. Even [Federal Reserve] Chairman [Alan] Greenspan suggested here some time ago that it's something on the order of the life blood, the free flow of information.[1]

19.     SaksFirst Privacy Statement explains not only when Defendant collects customers' personal information (when customers open an account or provide account information, make a wire transfer, or make deposits or withdrawals from their accounts, as well as periodically through third parties such as credit bureaus, affiliates and other companies).  Saks represents to customers, including via the Privacy Statement, and its Online Privacy Policy (described below) that it employs adequate safeguards to protect the personal identifying and financial information customers must provide to open an account.

20.     While not guaranteeing the safety of customer information in every instance, Saks claims to take "certain physical, administrative, operational, and technical steps to safeguard the information we collect from and about our customers and Site visitors…we make every effort to help ensure the confidentially, integrity and availability of our network and systems." *Id*.

21.     Defendant failed to follow their own procedural safeguards to protect Plaintiff's PPI, forcing her to file this suit.  Saks representative John Daly, or someone having physical or remote access to his terminal, illegally obtained Plaintiff's PII to perpetrate multiple instances of

---

[1] Federal Trade Commission, The Information Marketplace: Merging and Exchanging Consumer Data, Conference and Workshop, Washington D.C., 28 (March 13, 2011), available at https://www.ftc.gov/sites/default/files/documents/public_events/information-marketplacemerging-and-exchanging-consumer-data/transcript.pdf (last visited February 18, 2016). 3 See J. Angwin and W. Steel, Web's Hot New Commodity: Privacy, The wall Street Journal, Feb. 28, 2001, available at http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last visited August 8, 2015).

credit card and identity theft.  Defendant were given every opportunity to remedy this situation and process a refund, but have refused to conduct an adequate investigation into the obvious fraud, forcing Plaintiff to file this lawsuit.

## FIRST CLAIM FOR RELIEF
### Breach of Contract

22. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

23. On information and belief, Saks store representative Daly, or someone with physical or remote access to his store terminal, stole and misused Ms. Lee's personal credit information.  Plaintiff never had any contact with Daly, or anyone else in Store 601.  Actual fraud thus occurred on two separate instances in June, 2020 as a result of the breach resulting in thousands of dollars in damages and lost opportunity costs to Ms. Lee.

24. Defendant have failed to use reasonable or industry standard measures to protect Plaintiff's personal and financial information, and failed to conduct an adequate investigation into the fraudulent transactions to remedy the situation.

25. Defendant failed to adequately or properly segregate its network so as to protect personal customer data.

26. Defendant failed to use reasonable and best practices, safeguards, and data security measures to protect Plaintiff's personal and financial information.

27. When Plaintiff provided her personal and financial information to Defendant in order to receive the companies' services, she entered into express contracts with Defendant pursuant to which Defendant agreed to safeguard and protect such information from being compromised.

28. Defendant solicited Plaintiff to sign up with Saks and to provide her personal and financial information. Plaintiff later paid money to Defendant based on their express representations concerning the safeguarding and protection of personal information.

29. Plaintiff fully performed her obligations under the contracts with Defendant.

30. Defendant breached the contracts, including because they did not comply with applicable laws and regulations as described herein or otherwise adequately safeguard or protect Plaintiff's personal data from being accessed and taken. Defendant did not maintain sufficient security measures and procedures to prevent unauthorized access to Plaintiff's personal and financial information.

31. Plaintiff had her personal and financial information compromised as a result of the data breach.

32. Plaintiff has suffered and will continue to suffer damages as the result of Defendant's breach, including the monetary fees that Plaintiff paid to Defendant.

33. The losses and damages sustained by Plaintiff were the direct and proximate result of Defendant's breaches of the contracts between them and Plaintiff.

**SECOND CLAIM FOR RELIEF**
**Breach of Implied Contract**
**(in the Alternative to Count I)**

34. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

35. Plaintiff brings this cause of action in the alternative to Count I, and to the extent that an express contract is not found to exist between Defendant on the one hand, and Plaintiff on the other.

36. When Plaintiff provided her personal and financial information to Defendant in order to receive the companies' services, she entered into implied contracts with Defendant

pursuant to which Defendant agreed to safeguard and protect such information from being compromised.

37.     Defendant solicited Plaintiff to sign up with Defendant and to provide her personal and financial information.  Plaintiff accepted Defendant's offer and provided her personal and financial information.  Plaintiff paid money to Defendant to protect and safeguard her personal information and confidentiality.

38.     Plaintiff would not have provided and entrusted her financial and personal information to Defendant in the absence of the implied contracts.

39.     Plaintiff fully performed their obligations under the implied contracts with Defendant.

40.     In the contracts, Defendant promised to use industry leading measures to safeguard and protect Plaintiff's PII.

41.     Defendant breached the implied contracts and did not take reasonable measures to safeguard or protect Plaintiff's PII.  Defendant did not maintain sufficient security measures and procedures to prevent unauthorized access to Plaintiff's personal and financial information. Defendant also failed to conduct a reasonable investigation into the fraudulent transactions, which would have remedied the situation immediately.

42.     Defendant's failure to fulfill their implied contractual obligations resulted in Plaintiff's PII being taken and receiving services of far less value than what was promised, i.e., services that included adequate protection of confidential information. Accordingly, Plaintiff did not receive the full benefit of their bargain.

43.     Plaintiff has suffered and will continue to suffer damages as the result of Defendant's breach, including the monetary difference between the amount paid for services as

promised (which were promised to include adequate data protection) and the services actually provided by Defendant (which did not include adequate data protection).

44. The losses and damages sustained by Plaintiff as described herein were the direct and proximate result of Defendant's breaches of the implied contracts between it and Plaintiff.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

45. $100,000 for Defendant's breach of contract.

46. Prejudgment and postjudgment interest; reasonable attorneys' fees; costs of suit; and

47. For such other and further relief as the Court in its discretion deems appropriate.

## **JURY DEMAND**

Plaintiff Lee hereby demands a trial by jury on all issues triable to a jury as a matter of right.

Dated: 5/18/21

/s/ *[signature]*

Xiyan Zhang (Admitted in New York)
Stratum Law LLC
2424 E York St. Ste. 223
Philadelphia, PA 19125
Telephone: (215) 395-8756
Email: xzhang@stratumlaw.com

Pete Wolfgram (*Pro Hac Vice* to be filed)
Stratum Law LLC
2424 E York St. Ste. 223
Philadelphia, PA 19125
Telephone: (262) 501-2858
Email: pwolfgram@stratumlaw.com

*Attorneys for Plaintiff Kam Lee*